UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**STEVEN FALK and**
**SABR TAG, LLC,**
      **Plaintiffs,**

    v.                                          Case No. 19-CV-1168

**JOSEPH N. WHEELER, JR.,**
**JOSEPH N. WHEELER, SR.,**
**DENA R. WHEELER, INDOOR**
**WAR LLC, and HARD KNOCKS, LLC,**
      **Defendants.**

---

## DECISION AND ORDER

Plaintiff Steven Falk is a managing member of SABR Tag, LLC, a Wisconsin limited liability company which is also a plaintiff in this case. Defendants are members of the Wheeler family and two businesses they control: Indoor War, LLC, a franchisor of later tag facilities; and its affiliate Hard Knocks LLC. Plaintiffs filed a complaint alleging common law misrepresentation, breach of contract, and violations of various Wisconsin statutes, all related to SABR's purchase of a laser tag franchise from Indoor War. Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss several of these claims.

### I.    ALLEGATIONS

The complaint makes the following allegations.

Indoor War is a franchisor of "interactive entertainment centers," facilities that offer indoor laser tag arenas and a gaming lounge under marks that include Hard Knocks and Indoor War. Indoor War formerly owned and operated two such facilities in Orlando and Dallas, and also sold at least eight Indoor War franchises in other states, including the

Wisconsin franchise at issue in this case. Hard Knocks is an affiliate of Indoor War. It owns the Hard Knocks and Indoor War trademarks, and licenses them to Indoor War. Hard Knocks also granted Indoor War the right to license its software, trade secrets, products, procedures, methods, sales and promotional techniques, and personnel training to franchisees as part of the Indoor War franchise system. At all times material, Hard Knocks and Indoor War were controlled by members of the Wheeler family.

Falk learned about the Indoor War franchise opportunity after his business partner, Carey Catania, visited the corporate-owned Indoor War location in Orlando, Florida in the summer of 2015. On February 8, 2016, Falk and Catania toured the other corporate-owned Indoor War location in Dallas. Defendant Joseph Wheeler, Sr. ("Wheeler, Sr.") then began communicating with Falk and Catania by email and phone, soliciting them to invest in an Indoor War franchise.

Plaintiffs allege that Wheeler, Sr. made several misrepresentations in the course of these communications. For example, Wheeler Sr. provided the plaintiffs with fabricated financial statements with fabricated numbers from the Orlando Indoor War location to support his claims that investment in an Indoor War franchise would yield a high return. Wheeler Sr. also represented that plaintiffs would receive training, support with advertising and hiring for the business, operations and training manuals, an employee handbook, and all the items and equipment necessary to operate the franchise, but did not follow through on these representations after the plaintiffs had agreed to the transaction. Plaintiffs also allege that Wheeler Sr. did not tell them about additional purchases they would be required to make from the defendants on an ongoing basis as part of the franchise relationship, or about payments they would be required to make in

2

the course of establishing the business (such as an $8,000 charge for "lease review" and the creation of a mandatory space plan). Plaintiffs allege that Wheeler Sr. continued to make these misrepresentations until April 20, 2016.

Sometime in March, 2016, Falk and Catania received a franchise agreement from Indoor War. They reviewed the agreement with an attorney and, in reliance on the financial statements Wheeler Sr. had provided, both Falk and Catania signed the agreement in April, 2016. Wheeler Sr. later signed the agreement on behalf of Indoor War and returned it to Falk and Catania. (I note that the complaint does not specify the exact date on which the agreement was executed.) At the time Falk signed the franchise agreement, he mailed a $70,000 check to Wheeler and Indoor War for the initial franchise fee. Falk contributed all the capital to SABR for the initial investment paid to defendants.

Over the next several months, Joseph Wheeler, Jr. (Wheeler Jr.) sought and collected payment from Falk for various additional expenses that had not previously been disclosed. These expenses included $4,500 for a "space plan" and $3,500 for attorney review of the franchise's lease agreement. Falk paid these sums.

On February 20, 2017, Wheeler Jr. invoiced Falk for $487,709.49 for equipment needed to open the franchise. This was followed by invoices for additional sums. Between March 5, 2017 and April 17, 2017, Falk sent four checks to Indoor War totaling more than $500,000. However, as of April 2017, plaintiffs had not received any of the equipment or products they had paid defendants to provide. Falk sent emails to Wheeler Sr. and called him on the phone, but Wheeler Sr. did not respond to his inquiries. Concerned about the missing deliveries, Falk withheld his final payment of $48,698.33.

3

On April 20, 2017, Falk received a call from another Indoor War franchisee based in Nashville, who told Falk that Wheeler Sr. was a "con artist." On May 9, 2017, Falk spoke with five other franchisees, all of whom Wheeler had promised a safe and successful business venture. Each of these franchises has closed its doors or declared bankruptcy.

Falk eventually received some, but not all, of the items he had ordered. Indoor War withheld the laser tag guns, and Falk ultimately obtained them from a different supplier. Defendants also did not provide the operations manual, training manual or employee handbook they had promised. Despite promising to provide training, the defendants did not provide any training and ultimately Falk paid another franchisee to provide training.

As of August 16, 2017, Falk still had not received roughly $200,000 worth of items from the February 20, 2017 equipment notice. On August 16, 2017, Falk and Catania sent Wheeler Sr. a letter demanding all outstanding inventory or a refund for all items paid for but not yet shipped by close of business on September 5, 2017. Wheeler Sr. did not respond. On December 5, 2017, Wheeler Sr. called Catania. Catania stated that he and Falk still had not received the equipment and training they were promised. Wheeler Sr. told Catania that if Falk or Catania tried to sue him, he would "tie them up in court forever and run them out of money."

Falk and SABR filed this action on April 22, 2019.

## II.  LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing a plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Defendants present two general arguments for dismissal of plaintiffs' claims: they argue that the common law misrepresentation claims are barred by the economic loss doctrine, and that the various statutory claims are time-barred. Defendants do not seek dismissal of plaintiffs' breach of contract claim.

#### a. Economic Loss Doctrine

Plaintiffs seek recovery on claims of intentional misrepresentation, negligent misrepresentation, and strict liability misrepresentation based on the representations that Wheeler, Sr. made to them before they purchased the Indoor War franchise regarding the financial performance of the two corporate-owned Indoor War franchises and about the manuals, supplies and extent of training that plaintiffs would receive with their purchase.. Defendants argue that these claims are barred by Wisconsin's economic loss doctrine.

The economic loss doctrine "requires transacting parties in Wisconsin to pursue only their contractual remedies when asserting an economic loss claim, in order to preserve the distinction between contract and tort." *Hinrichs v. DOW Chemical Company*, 937 N.W.2d 37, 46 (Wis. 2020). The three policies underlying the doctrine are (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage

the party best situated to assess the risk of economic loss, the commercial purchaser, to assume, allocate, or insure against that risk. *Id.*

For the purpose of the economic loss doctrine, "economic loss" is defined as "damages resulting from inadequate value because the product is inferior and does not work for the general purpose for which it was sold." *Below v. Norton*, 310 Wis.3d 713, 727 (2008). "Recovery for economic loss refers to recovery as a result of a product failing in its intended use or failing to live up to a contracting party's expectations." *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 283 Wis.2d 555, 580 (2005)(internal citations omitted). In determining whether the economic loss doctrine applies, "a court must examine the nature of the damages complained of, the risk that caused them to arise and how that risk impacts on the policies underlying the doctrine." *Prent Corp. v. Martek Holdings, Inc.*, 238 Wis.2d 777, 789-90 (Wis.App. 2000).

The economic loss doctrine applies to the claims in this case. To begin, the alleged losses in this case—i.e., the loss of the funds Falk invested in the Indoor War franchise—are purely economic; that is, they arise from the franchise product's failure to meet plaintiffs' expectations. Further, the risk that gave rise to these losses is plaintiffs' reliance on Wheeler Sr.'s representations about the quality (i.e., completeness and timeliness) of the business-in-a-box product they were purchasing, and about the revenue the product would generate. This is the sort of risk contemplated in the policies underlying the economic loss doctrine. Plaintiffs were free to bargain to allocate the risk that the business-in-a-box they purchased would be incomplete or not timely delivered. Further, plaintiffs were well-positioned to assess such risk: they might, for example, have asked defendants to provide contact information for other purchasers of Indoor War franchises

6

to serve as references as to the franchises' quality and revenue-generating potential. For these reasons, the economic loss doctrine applies to bar plaintiff's negligent and strict liability misrepresentation claims.

The economic loss doctrine also bars plaintiffs' intentional misrepresentation claim, because the claim does not fall within the narrow fraud in the inducement exception that the Wisconsin Supreme Court adopted in *Kaloti.* There, the court held that "a fraud in the inducement claim is not barred by the economic loss doctrine where the fraud is extraneous to, rather than interwoven with, the contract." *Kaloti*, 283 Wis.2d at 585. Put differently, to qualify for the exception, the fraud must "concern[] matters whose risk and responsibility did not relate to the quality or characteristics of the goods for which the parties contracted or otherwise involve performance of the contract." *Id.* Here, the alleged misrepresentations are clearly addressed to the quality and makeup of the franchise "product," and to the defendants' intent and capacity to perform their contractual obligations. Because the intentional misrepresentation claims do not fall within the *Kaloti* exception, they are subject to the economic loss doctrine and are barred.

### b. Wisconsin Franchise Investment Law Claim

The complaint asserts that defendants violated Section 553.41(3) of the WFIL, which prohibits the offering or sale of a franchise by means of a written or oral communication that includes an untrue statement of material fact or omits a material fact in a manner that renders the statement misleading. Wis. Stat. § 553.41(3). Section 553.51(2) provides a civil cause of action for violation of § 553.41(3), and § 553.51(4) requires that such action be brought "before the expiration of 3 years after the act or transaction constituting the violation upon which the liability is based." Wis. Stat.

7

553.51(4). The plaintiffs filed their complaint on April 22, 2019, and the parties agree that this means that claims based on "acts or transactions" prior to April 20, 2016 are time barred.[1]

Defendants argue that any claims based on communications that occurred *before* April 20, 2016 are time-barred. Plaintiffs argue that the "act or transaction" that triggers the limitations period is the sale of the franchise, and that misleading communications that occurred before the sale can be used as the basis of the claim.

I agree with plaintiffs that the limitations period began to run on the date the franchise was sold. *See Sterling Vision DKM, Inc. v. Gordon*, 976 F.Supp.1194, 1199 (E.D. Wis. 1997)(limitations period began to run when franchise agreement was executed); *Wauwatosa Hotel Group, LLC v. Days Inn Worldwide, Inc.*, 2014 WL 12650624 at 5 (E.D. Wis. Dec. 12, 2014) (the "act" that triggers the limitations period under § 553.51(4) is the sale of the franchise). I note, however, that the complaint does not state with precision the date on which the franchise agreement was executed; it indicates only that both parties signed the agreement at some time in April, 2016. ECF # 1-1 at ¶ 18. "Where a defendant raises the statute of limitations as an affirmative defense at the motion to dismiss stage, a court can only dismiss a claim 'when [the] complaint plainly reveals that an action us untimely under the governing statute of limitations." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). On the facts before me, I can't say that the plaintiffs have pleaded their WFIL claim out of court on

---

[1] April 20, 2019 was a Saturday, meaning that plaintiffs had until the following Monday to file their suit. ECF # 18 at 1-2.

8

Case 2:19-cv-01168-LA   Filed 02/13/20   Page 8 of 13   Document 22

statute of limitations grounds. Therefore, I will deny defendants' motion to dismiss this claim.[2]

### c. Deceptive Trade Practices Claim

The complaint also asserts that defendants violated Wis. Stat. § 100.18(1), which prohibits, among other things, the making of untrue statements or representations with the intent to sell merchandise or services. An action under Wis. Stat. § 100.18 may not be commenced "more than three years after the occurrence of the unlawful act or practice which is the subject of the action." Wis. Stat. § 100.18(11)(b)3. Here, the act that starts the limitation period running is the false representation. *Kain v. Bluemound East Indus. Park, Inc.*, 248 Wis.2d 172, 183 (Wis. App. 2001). Thus, in this case, only false representations that occurred on or after April 20, 2016, can form the basis of an actionable § 100.18 claim. Again, the complaint is not specific about the dates on which certain misrepresentations took place. I will dismiss the § 100.18 claim to the extent it rests on false representations made before April 20, 2016. Only false representations made on or after April 20, 2016 are actionable.

### d. Civil Theft Claim

Plaintiffs also assert claims of theft under Wis. Stat. §§ 943.20(1)(a) and (d), which may be brought as a private cause of action under Wis. Stat. § 895.446(1). Defendants argue theses claim are barred by the economic loss doctrine. This argument fails. The

---

[2] Defendants have also moved for dismissal of Hard Knocks, Wheeler Junior and Dena Wheeler from this lawsuit. The complaint alleges that these defendants are jointly and severally liable for violations of Wis. Stat. § 553.41(3) pursuant to the personal liability provisions of Wis. Stat. § 553.51(3), and defendants do not contest this point. Because I am allowing the § 553.41(3) claim to proceed, I will not dismiss these defendants from this lawsuit at this time.

9

Wisconsin Supreme Court, in *Stuart v. Weisflog's Showroom Gallery, Inc.*. 308 Wis.2d 103, 124 (2008), stated that it was satisfied that the [economic loss doctrine] cannot apply to statutory claims." Relying on *Stuart,* the Wisconsin Court of Appeals concluded that the economic loss doctrine does not preclude claims under Wis. Stats. §§ 895.446 and 943.20(1)(d). *Ferris v. Location 3 Corp.*, 337 Wis.2d 155, 166-67 (Wis.App. 2011). Therefore, the economic loss doctrine is not a bar to Falk's civil theft claims.

Defendants also argue that the civil theft claims are time-barred. Because § 895.446 does not state a limitations period, it is governed by § 893.93 which provides limitations for "Miscellaneous Actions." Various provisions of § 893.93 might plausibly be applied to the present civil theft claims, including a three-year limitation period for "an action upon a liability created by statute" under § 893.93(1m)(a), a three-year limitation period for "an action for relief on the ground of fraud" under § 893.93(1m)(b), or a two-year limitation period for "an action by a private party upon a statute penalty" under § 893.93(2)(a). I need not resolve which statute of limitations applies, because on the allegations in the complaint, plaintiffs' § 943.20 claims accrued within two years of the commencement of this action—i.e., within the shortest of the plausibly applicable limitations periods.

The two-year statute of limitations under § 893.93(2) begins to run when a claim accrues. Wis. Stat. § 893.93(2). "A cause of action accrues when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and party with a present right to enforce it." *Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis.2d 302, 315 (1995). A plaintiff who does not know he has been wronged is not capable of enforcing his claim. *Id* at 315-316. Thus, in cases where discovery of the injury is not implicit in the

10

circumstances surrounding the original misconduct, the 'discovery rule' tolls the statute of limitations "until the plaintiff discovers or with reasonable diligence should have discovered that he or she has suffered actual damage due to wrongs committed by a particular identified person." *Id.* The discovery rule does not change the basic propositions about when a claim accrues; "it simply defines some of the elements." *Id.*

In the present case, the complaint presents two alternative claims under §§ 943.20 and 895.446, rather than a single unitary claim. The first alternative claim is under § 943.20(1)(a) which prohibits intentional retention of the movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property. Plaintiffs allege that defendants have intentionally retained plaintiffs' franchise fee, equipment fee and other payments without their consent. Specifically, plaintiffs allege that on September 16, 2017 they sent a letter to Wheeler Senior demanding all outstanding inventory or a refund for all items paid for but not yet shipped by close of business on September 5, 2017 and received no reply. On these allegations, September 5, 2017 was the date on which defendants first retained the plaintiffs' funds without plaintiff's consent; September 15, 2017 was also the date on which plaintiffs became aware that defendants were retaining the funds without consent. I conclude that this claim accrued on September 15, 2017, which is less than two years before plaintiffs initiated this action on April 22, 2019.[3]

---

[3] This conclusion is consistent with Wis. Stat. 939.74(2)(b), which tolls of the time limitation on prosecutions for unlawful retention of property: "A prosecution for theft against one who obtained possession of the property lawfully and subsequently misappropriated it may be commenced within one year of the discovery of the loss by the aggrieved party…." Wis. Stat. 939.74(2)(b).

11

The second alternative claim is under Wis. Stat. § 943.20(1)(d), which prohibits "obtain[ing] title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." A cause of action in a case based on fraud does not accrue until the discovery, by the aggrieved party, of the facts constituting the fraud. *John Doe 1 v. Archdiocese of Milwaukee*, 303 Wis.2d 34, 68 (2007); Wis. Stat. § 893.93(1)(b). Under this rule, "it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. What is required is that it be in possession of such essential facts as will, if diligently investigated, disclose the fraud." *Koehler v. Haechler*, 27 Wis. 275, 278 (1965). The complaint alleges that Falk received a phone call on April 20, 2017 from another Indoor War franchisee, who told Falk that Wheeler was "nothing but a con artist," and that as a result, Falk's "suspicions arose" ECF # 1-1, ¶ 32. It is plausible to infer from this allegation that April 20, 2017 is the date on which Falk came into possession of facts which would, if investigated, reveal the alleged fraud; thus, April 20, 2017 is plausibly the date on which the plaintiffs' fraud claim accrued. April 20, 2017 is within the two year statute of limitations[4]; thus the claim survives defendants' motion to dismiss.

**IT IS ORDERED** that plaintiffs' motion for leave to file sur-reply (ECF # 19) is **GRANTED.**

Further, for the reasons stated above, **IT IS ORDERED** that the defendants' motion to dismiss (ECF # 11) is **GRANTED IN PART AND DENIED IN PART.** The claims for

---

[4] April 20, 2019 fell on a Saturday, meaning that plaintiffs had until the ensuing Monday to initiate this action. Plaintiffs initiated this action on Monday, April 22, 2019.

12

common law misrepresentation are dismissed under the economic loss doctrine. The claims under Wis. Stat. §§ 553.41 and 895.46 remain live, as does the claim under Wis. Stat. § 100.18, to the extent it is premised on false representations made on or after April 20, 2016.

Dated at Milwaukee, Wisconsin, this 13th day of February, 2020.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge